UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KENNETH RAWSON,

    Plaintiff,

v.

RECOVERY INNOVATIONS, INC., et al.,

    Defendants.

CASE NO. C17-5342 BHS

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on the motion to dismiss of Defendants Recovery Innovations, Inc. ("Recovery Innovations"), Sami French ("French"), Jennifer Clingenpeel ("Clingenpeel"), and Dr. Vasant Halarnakar, M.D. ("Halarnaker") (collectively "Defendants"). Dkt. 9. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I.     BACKGROUND

On May 8, 2018, Plaintiff Kenneth Rawson ("Plaintiff") filed his complaint. Dkt. 1. Plaintiff filed an amended complaint on June 8, 2017. Dkt. 5. Plaintiff brings claims

under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and various state laws. *Id.* Plaintiff alleges that he was both wrongfully involuntarily committed at Recovery Innovations and wrongfully forced to take antipsychotic medication. *Id.*

On July 20, 2017, Defendants moved to dismiss. Dkt. 9. On August 8, 2017, Plaintiff responded. Dkt. 14. On August 24, Defendants replied. Dkt. 16.

## II. DISCUSSION

### A. Legal Standard

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

### B. Color of State Law

"To establish a § 1983 claim, a plaintiff must show that an individual acting under the color of state law deprived him of a right, privilege, or immunity protected by the United States Constitution or federal law." *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008). Defendants argue that Plaintiff has failed to state a § 1983 claim on the

basis that their actions were not taken "under color of state law" because they are comprised of a private entity and its employees.

"An individual acts under color of state law when he or she exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015) (quotation omitted). As a general rule, it is presumed that actions by private parties are not taken under color of state law. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) ("We start with the presumption that conduct by private actors is not state action."). However, "[i]f the [Constitution] is not to be displaced, . . . its ambit cannot be a simple line between States and people operating outside formally governmental organizations, and the deed of an ostensibly private organization or individual is to be treated sometimes as if a State had caused it to be performed." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Therefore, "a private entity may be designated a state actor for some purposes but still function as a private actor in other respects." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 814 (9th Cir. 2010). "In § 1983 actions, "color of state law" is synonymous with state action." *George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996).

The Ninth Circuit has "recognize[d] at least four different criteria, or tests, used to identify state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir.

2003) (quotation omitted). The "public function" test is perhaps the most clearly defined theory out of those listed above, and it has been set forth by the Ninth Circuit as follows:

> Under the public function test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton*, 382 U.S. 296, 299 (1966). To satisfy the public function test, the function at issue must be both [1] traditionally and [2] exclusively governmental. *Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982).

*Lee v. Katz*, 276 F.3d 550, 554–55 (9th Cir. 2002).

However, the Court's review of applicable precedent reveals that the "government nexus," "government compulsion," and "joint action" tests are only vaguely delineated, and it is questionable whether the tests listed above are actually separate and distinct legal theories. For instance, the "government nexus" test is satisfied when there is "a sufficiently close nexus between the State and the challenged action of the [defendant] so that the action of the latter may be fairly treated as that of the State itself." *Jensen v. Lane Cty.*, 222 F.3d 570, 575 (9th Cir. 2000) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). *See also Brentwood Acad.*, 531 U.S. at 295. In describing the parameters of this test, the Supreme Court has explained:

> What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.

*Brentwood Acad.*, 531 U.S. at 295–96. Indeed, while recognizing "a host of facts that can bear on the fairness of such an attribution," the Supreme Court has provided a non-

exhaustive list of seven factual circumstances under which the "government nexus" test can be satisfied. *Id.* at 296. These fact patterns include when:

1. The challenged action of a nominally private party results from the State's exercise of "coercive power";

2. The State provides "significant encouragement, either overt or covert," to a private action;

3. The party participates as a "willful participant in joint activity with the State or its agents";

4. The party is "controlled by an agency of the State";

5. The party has been delegated a "public function" by the State;

6. The party is "entwined with governmental policies"; or

7. When the State is "entwined with [the party's] management or control."

*Id.* Notably, the list of scenarios from *Brentwood Academy* includes the delegation of a "public function" to a private entity and "coercion" by the government. This indicates that the "government nexus," "coercion," and "public function" tests are not actually separate and distinct, but are better described as interrelated doctrines aimed at answering the same underlying question of government responsibility for the conduct of nominally private actors.

Ultimately, the overarching purpose of the "government nexus" requirement "is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original). Accordingly, the Ninth Circuit has

held that a private contract psychiatrist acted under color of state law when his private practice group and a county had "undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill and a danger to themselves or others." *Jensen*, 222 F.3d at 575. In reaching this conclusion, the Ninth Circuit specifically noted that: (1) state or county "employees initiate[d] the evaluation proces;;" (2) "there [was] significant consultation with and among the various mental health professionals," including the private group's psychiatrists and the county's "crisis workers"; and (3) the private group "help[ed] to develop and maintain the mental health policies" of the county facility to which the plaintiff was involuntarily committed. *Jensen*, 222 F.3d at 575.

The Court finds that Plaintiff has sufficiently alleged a plausible "government nexus" with his involuntary commitment at Recovery Innovations. Specifically, the complaint alleges that the civil commitment process was initiated by a Clark County Designated Mental Health Professional ("DMHP") based on reports from the Clark County Sheriff's Office. Dkt. 5 at 3. It further alleges that Recovery Innovations and the individually named defendants received Plaintiff at their facility, involuntarily committed him, and forced him to take powerful psychotropic medication based almost exclusively on the opinions and documentation provided by the County DMHP. Dkt. 5 at 3–4. It is also worth noting that the complaint alleges that Recovery Innovations operates on the very campus of Washington's Western State Hospital under a lease with the State. Dkt. 5 at 3. Therefore, the Court finds that the complaint alleges a nexus between Defendants and the government that sufficiently parallels the relationship described in *Jensen* as to

warrant further discovery into Defendants' and the government's interrelated role in the process of the pursuing of Plaintiff's involuntarily commitment.

Notably, the standards articulated above make clear that the evaluation of the "government nexus" test is an intensively factual inquiry. Accordingly, the Supreme Court has recognized that "[t]he true nature of the State's involvement may not be immediately obvious, and detailed inquiry may be required in order to determine whether the test is met." *Jackson*, 419 U.S. at 351. Such is the case here. Further discovery may establish or disprove the necessary "government nexus" necessary to support a § 1983 claim; or it may otherwise reveal a countervailing reason against finding state action. However, for the purpose of withstanding Defendants' motion to dismiss, the complaint alleges sufficient facts to support a plausible "government nexus" and Defendants' motion to dismiss the § 1983 claim must be denied.

**C.     Immunity on State Law Claims**

Defendants also move for dismissal of Plaintiff's state law claims on the basis that they are statutorily barred by Washington's Involuntary Treatment Act ("ITA"), which states:

> "No officer of a public or private agency, nor the superintendent, professional person in charge, his or her professional designee, or attending staff of any such agency, . . . or an evaluation and treatment facility shall be civilly or criminally liable for performing duties pursuant to this chapter with regard to the decision of whether to admit, discharge, release, administer antipsychotic medications, or detain a person for evaluation and treatment: PROVIDED, That such duties were performed in good faith and without gross negligence."

RCW 71.05.120(1).

Plaintiff's complaint expressly alleges that Defendants acted in bad faith or with gross negligence, Dkt. 5 at 10–11, but these conclusory allegations of law are insufficient on their own to defeat a motion to dismiss. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005). Instead, Plaintiff must overcome the motion to dismiss by pointing to specific factual allegations in the complaint that can support a reasonable inference that Defendants acted with gross negligence or bad faith.

The Court concludes that Plaintiff has satisfied his burden in pleading a claim of gross negligence or bad faith. Gross negligence is "negligence substantially and appreciably greater than ordinary negligence." *Nist v. Tudor*, 67 Wn.2d 322, 331 (1965). In turn, "bad faith implies acting with tainted or fraudulent motives." *Spencer v. King Cty.*, 39 Wn. App. 201, 208 (1984), *overruled on other grounds by Frost v. City of Walla Walla*, 106 Wn.2d 669 (1986). Plaintiff has alleged several facts to support a claim for gross negligence. First, he has alleged that Defendants forced him to take antipsychotic medication shortly after his arrival despite conducting only a cursory mental health evaluation that did not reveal any observations that Plaintiff constituted a danger to himself or others. Dkt. 5 at 4–5. RCW 71.05.215 prohibits forced administration of antipsychotic medication unless:

> [1] A person [is] found to be gravely disabled or presents a likelihood of serious harm as a result of a mental disorder . . . [2] it is determined that the failure to medicate may result in a likelihood of serious harm or substantial deterioration or substantially prolong the length of involuntary commitment[,] and [3] there is no less intrusive course of treatment than medication in the best interest of that person.

RCW 71.05.215. Plaintiff has also alleged that Defendants injected him with antipsychotic medication against his will on multiple other occasions, even though he did not pose a danger to himself or others, was not gravely disabled, and the injections were not otherwise medically necessary. Dkt. 5 at 8. These allegations of sustained and repeated violations of Plaintiff's right to refuse medication are accompanied by general allegations that (1) the staff who evaluated Plaintiff at Recovery Innovations lacked the necessary qualifications or experience to perform the functions that they were assigned and (2) "[t]he evaluation and treatment and involuntary confinement of Mr. Rawson by Recovery Innovations and the individual defendants fell so substantially below the standards generally accepted in the medical community for emergency mental health evaluation and treatment that it was committed with deliberate indifference to Mr. Rawson's rights." Dkt. 5 at 4–6, 9. Taken together and accepted as true, these allegations paint a picture of "negligence substantially and appreciably greater than ordinary negligence" that would require resolution by a jury. *Nist*, 67 Wn.2d at 331.

Moreover, Plaintiff has asserted that Defendants provided false or fabricated allegations regarding his conduct or mental health when petitioning for his involuntary commitment. For instance, Plaintiff alleges that Defendants fabricated allegations that he "had threatened, attempted, or inflicted physical harm upon the person of another or him/herself, or substantial damage to property of another during the period in custody for evaluation and treatment," although no such conduct had occurred. Dkt. 5 at 6. Plaintiff also claims that Defendants falsely indicated that his condition had worsened during the initial period of his confinement. *Id.* at 7. Furthermore, Plaintiff alleges that Defendants'

actions were motivated by personal animus towards Plaintiff, resulting from Plaintiff's comments regarding Recovery Innovations' purported failure to satisfy applicable standards of care and the aggressive examination of French by Plaintiff's counsel. *Id.* at 4–5. Such allegations are sufficient to support a claim that Defendants acted with "tainted or fraudulent motives." *Spencer*, 39 Wn. App. at 208. Accordingly, the Court denies Defendants' motion to dismiss the state law claims.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 9) is **DENIED**.

Dated this 25th day of October, 2017.

BENJAMIN H. SETTLE
United States District Judge