Hon. Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| KENNETH RAWSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RECOVERY INNOVATIONS, INC., a corporation, SAMI FRENCH, an individual, JENNIFER CLINGENPEEL, an individual, VASANT HALARNAKAR, an individual,<br><br>Defendants. | No. 3:17-cv-05342-BHS<br><br>SECOND DECLARATION OF JEFFREY GELLER, M.D. IN SUPPORT OF PLANTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Attached hereto is my supplemental report, which I declare under penalty of perjury is true. My opinions expressed in this report are based on my review of 25 redacted patient charts that Recovery Innovations produced last month (October 2018) pursuant to court order, after the September 2018 noting date for summary judgment motions.

DATED this 15th day of November, 2018, at Seattle, Washington.

_____
Jeffrey Geller

SECOND DECLARATION OF JEFFREY GELLER, M.D. IN SUPPORT
OF PLANTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1
No. 3:17-cv-05342-BHS

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed this document entitled **SECOND DECLARATION OF JEFFREY GELLER, M.D. IN SUPPORT OF PLANTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant(s):

**Attorney for Defendants**

Benjamin R. Justus:   ben@lpjustus.com
Lory R. Lybeck:   lory@lpjustus.com

[X] Via CM/ECF system
[ ] Via First Class Mail
[ ] Via Email- *per e-service agreement*
[ ] Via Messenger
[ ] Via Overnight Delivery

DATED this 16th day of November, 2018, at Seattle, Washington.

*/s/Sam Kramer*
Sam Kramer, WSBA #50132

SECOND DECLARATION OF JEFFREY GELLER, M.D. IN SUPPORT OF PLANTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2
No. 3:17-cv-05342-BHS
11310.01 lk121205

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

# **EXHIBIT 1**

Jeffrey Geller, MD, MPH, DLFAPA

*Practice of Psychiatry*

73 Twinbrooke Drive

Holden, MA 01520

November 7, 2018

Jesse Wing
Sam Kramer
MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104-3961

Dear Attorneys Wing and Kramer,

     I was asked to review patient charts received from Recovery Innovations (RI) in October 2018, and write a supplemental report expressing my opinion as to whether they reflect the same or similar deficiencies in evaluation and treatment that I found regarding Defendants' evaluation and treatment of Mr. Rawson.  I have reviewed a random sample of 25 patient charts, and found examples of serious deficiencies in virtually every chart so have concluded that these deficiencies are widespread and common practice at RI.  As illustrated by the examples I describe below, RI's current patient charts from 2018 reflect the same serious deficiencies I found in Defendants' evaluation and treatment of Mr. Rawson three years ago, in 2015, and they amount to gross negligence and worse.

     The names in the patient files produced to me were redacted so I refer to them by Chart number, and by bates number range.

    **A.  Inadequate Psychiatric Evaluations**

     I previously opined that "Recovery Innovations and its staff did not meet the standard of care for evaluating and treating Kenneth Rawson," Geller Declaration at p. 79, and "Before RI decided to discharge Rawson, Dr. Halarnakar never conducted anything close to a full mental status exam, the standard method for evaluating mental illness."  Geller Declaration at p. 77.  RI's 2018 patient charts reflect that Dr. Halarnakar and RI's psychiatric evaluations still fall well below the standard of care and in some cases dangerously so.  Below are examples of such charts.

1. Chart05(RIPT.016910-016922, 017088-017092)
2. Chart77 (RIPT.043485-043496, 043113-043114)
3. Chart69 (RIPT.040025-040035, 040017-040018, 040036)
4. Chart30 (RIPT.021266-021277)
5. Chart68 (RIPT.015439-015450)
6. Chart65 (RIPT.014839-014840, 014877-014881, 014935-014939
7. Chart82 (RIPT.044821-044833, 044793-044794)

As an illustration, in Chart 77, nearly all of contents of Dr. Halarnakar's evaluation reflect he did not learn the information from interviewing the patient, and what he *might* have learned from interviewing the patient was slight at best, and mostly insignificant. Yet, Dr. Halarnakar wrote that he spent 60 minutes evaluating the patient. *See* 043488 – 95; 043113.

Similarly, in Chart 69, Dr. Halarnakar: collected virtually no information from the patient; obtained no history of the patient's present illness; conducted an absolutely inadequate mental status exam of the patient lacking all meaningful detail about psychiatric symptoms; did not state any treatment plan for substance abuse identified in drug screen; provided no examples of "delusions"—the only word he documented purportedly in support of the medication prescribed for "psychosis"; concluded that the patient suffered "hallucinations," (page 12) which contradicts earlier in the evaluation where he did not report any hallucinations (page 8); left large portions of the evaluation to be filled out by someone else yet wrote that his evaluation took 60 minutes. *See* 020025 – 35; 040017-119.

Likewise, in Chart 30, all of the contents of the ARNP's evaluation come from documentation and there is no evidence that the ARNP actually interviewed the patient; large portions of the evaluation template are left blank for someone else to fill out yet the ARNP wrote that her evaluation took 60 minutes; the prescribed medication for "Risperdal" to treat "psychosis" was not based on any finding, and there was no treatment plan, and no physical exam. 021266 – 77.

The other charts suffer from these same types of serious deficiencies.

## B. Psychiatric Progress Notes

In my declaration, I found that "The notes in Rawson's chart were written almost exclusively by staff not licensed to prescribe medication or conduct psychiatric evaluations. MHPs were mostly social workers, and lacked prescribing authority and an adequate educational background in psychiatry." Geller Declaration at p. 78. And, I

found that "Throughout Rawson's detention, RI failed to create or follow a treatment plan. This is a failure of a core responsibility, fundamental to the evaluation and treatment of patients. Among other things, a treatment plan articulates the patient's symptoms that need treatment and the interventions the treatment team will follow to resolve them."  Geller Declaration at p. 78.

In RI's 2018 charts, these kinds of problems remain manifest showing that no current evaluation had been performed, or the evaluation that had been performed was woefully incomplete and inadequate and sometimes dangerously so.  These deficiencies are reflected in the following charts:

1. Chart05 (RIPT.016966-016971, 016997-017002, 017043-017047)
2. Chart31 (RIPT.022150-022155)
3. Chart79 (RIPT.026676-026688, 026650-026651)
4. Chart69 (RIPT.040146-040150, 040192-040195, 040217-040221)
5. Chart30 (RIPT.021294-021298, 021315-021319, 021332-021336)
6. Chart65 (RIPT.014985-014990)

For example, in Chart 05, the Psychiatric Rounds Note template is left mostly blank reflecting no ongoing assessment of treatment and the multiple medications prescribed, dangerousness or need for further commitment, and discharge planning; many normal findings undermining the claimed need for involuntary commitment.  *See* RIPT.016966-016971, 016997-017002, 017043-017047).

Similarly, in Chart 31, the Psychiatric Note evaluating for discharge is mostly blank lacking the vast majority of determinations that RI's form recognizes are necessary to make, and ends with a conclusory assertion that the patient does not meet involuntary criteria.  *See* RIPT.022150-022155.

Also, in Chart 69, the Psychiatric Notes are largely blank, contain cut-and-paste information, do not articulate how the patient meets any criteria for involuntary commitment, do not summarize the patient's current condition, and do not state a plan of care or any progress or lack of progress on medications prescribed; further, the discharge note reflects the practitioner did not see the patient for discharge and notes almost nothing.  *See* RIPT.040146-040150, 040192-040195, 040217-040221.

### C. Unjustified/Unusual Psychopharmacology (especially in acute treatment setting)

I have expressed the opinion that Defendants forced on Mr. Rawson "psychotropic medication, including antipsychotic medications without a proper rationale for the treatment, and without an explanation of risks and benefits of the treatment (required even if medication is involuntary)." Geller Declaration at p. 75. Dr. Halarnakar and RI have continued this practice with their other patients in 2018, as shown in the following charts:

1. Chart27 (RIPT.020561-020565)
2. Chart79 (RIPT.026760)
3. Chart77 (RIPT.043296-043300, 043399-043403, 043556-043560, 043617-043628, 043644-043648)
4. Chart21 (RIPT.019682-019686, 019688-019692, 019707)
5. Chart82 (RIPT.044992-044997)

For example, in Chart 27, RI prescribed four different anti-psychotic medications to the patient in just two weeks, and two different atypical anti-psychotic medications at the same time. *See* RIPT.020561-020565.

And in Chart 79, RI has prescribed the anti-depressant Effexor for a patient for whom it would be contraindicated at that time. *See* RIPT.026760.

Chart 77, likewise, reflects that during RI's confinement of this patient for 26 days, after any initial assessment, Dr. Halarnakar met with her so infrequently and for such short periods of time—17.5 minutes total—that it amounted to less than one (1) minute per day, treating her with different anti-psychotic medications without any stated rationale. *See* RIPT.043296-043300, 043399-043403, 043556-043560, 043617-043628, 043644-043648.

### D. Nursing Notes with all parts of template blank except clinical summary

In my Declaration, I found that the RSA of the E&T, Carpenter, "does not know what roles staff play in traditional psychiatric inpatient facilities, including state hospitals, such as registered nurses and occupational therapists." Geller Declaration at p. 5. RI's 2018 patient charts show an even greater level of substandard RN performance, as evidenced by the fact that the RN notes are virtually blank with only the most conclusory observations; others are nearly blank but contain unsupported and purported psychiatric observations of the patient, and none record the education of patients and inquiry about side effects at the time of administration of medication—a standard nurse function.

       1.    Chart27 (RIPT.020391-020395, 020428-020431)
       2.    Chart05 (RIPT.016901-016905)
       3.    Chart31 (RIPT.022138-022141)
       4.    Chart77 (RIPT.043179-043183)
       5.    Chart69 (RIPT.040021-040024, 040060-040063)
       6.    Chart30 (RIPT.021219-021222)
       7.    Chart65 (RIPT.014849-014852)
       8.    Chart82 (RIPT.044803-044806)

### E. Grossly Negligent History & Physical Exam

"The notes in Rawson's chart were written almost exclusively by staff not licensed to prescribe medication or conduct psychiatric evaluations. MHPs were mostly social workers, and lacked prescribing authority and an adequate educational background in psychiatry." Geller Declaration at 78. Reflecting RI's abysmal collection of information about patient, Charts 30, and 68 contain no history taken by RI and no physical exam conducted by RI whatsoever. And, the following charts reflect grossly inadequate efforts to collect and record histories and physical exams:

       1.    Chart27 (RIPT.020552-020553)
       2.    Chart31 (RIPT.022191-022192, 022183)
       3.    Chart30 (RIPT.021229-021235)
       4.    Chart65 (RIPT.015071-015073)
       5.    Chart82 (RIPT.045131-045132)

### F. Improper Medication over Objection

I have expressed the opinions that "Recovery Innovations records do not support the decision to override Mr. Rawson's refusal of antipsychotic medication to prevent a likelihood of serious harm or substantial deterioration or substantially prolonged length of involuntary commitment" and that "Recovery Innovations records do not show it met the standard of care for overriding Mr. Rawson's refusal of antipsychotic medication." Geller Declaration at 79. RI's 2018 charts show these problems continue at RI, as illustrated by the following patient charts:

       1.    Chart77 (RIPT.043184-043186)
       2.    Chart27 (RIPT.020554, 020551)

In Chart 77, there is no record of Dr. Halarnakar interviewing the patient and making an independent assessment to support his sworn declaration to the court. *See* RIPT.020552-020553.

In Chart 27, Dr. Halarnakar failed to sign the Override for Involuntary Treatment. *See* RIPT.020552-020553, and the provider never dated the form verifying that he or she discussed the goals of prescribing medications with the patient, who refused consent.

### G. No Grounds in Notes to Support Continued Involuntary Stay

In my Declaration, I found that contrary to the Defendants' assertions:

- "Rawson was not exhibiting any signs or symptoms of psychosis in the first 72 hours after his initial detention by the police. There was no evidence in RI's record of its own data that supported keeping Mr. Rawson beyond the initial 72-hour hold;"

- "RI had conducted no assessments that would indicate there were grounds to hold Rawson against his will;"

- "There is no evidence Mr. Rawson threatened anybody during his confinement at RI;"

- "French documented multiple times that she had a basis to keep Rawson locked up when in fact she had no basis."

- "No 'observations' by RI documented in Mr. Rawson's chart reflect evidence of danger to others or grave disability."

- "During Mr. Rawson's 55 days at RI, no MHP note met RI's obligation under the Involuntary Treatment Act that evaluation and treatment facilities document the grounds for continuing to detain a patient, every day. Instead, the MHP notes in Mr. Rawson's chart just repeated the same conclusory statements about his condition and behaviors, failing to document a single specific observation that supported their conclusions. This continued until just days before RI released Rawson"

Geller Declaration at pp. 77-78. RI's 2018 charts of other patients continue this grossly negligent practice, as shown in the following:

1. Chart27 (RIPT.020381-020383, 020405-020407)
2. Chart05 (RIPT.016929-016931, 016996)
3. Chart31 (RIPT.022130-022131)
4. Chart79 (RIPT.026652-026655, 026693-026697, 026804)
5. Chart65 (RIPT.014841-014843)
6. Chart82 (RIPT.044795-044797)

### H. Absence of a Basis for Filing Petitions for Involuntary Commitment

In my Declaration, I found that French "filed a 14-day commitment petition indicating that she had examined him--which is a requirement of the petition--but she had never examined him" and "Rawson was not exhibiting any signs or symptoms of psychosis in the first 72 hours after his initial detention by the police. There was no evidence in RI's record of its own data that supported keeping Mr. Rawson beyond the initial 72-hour hold;" and "RI had conducted no assessments that would indicate there were grounds to hold Rawson against his will;" and "Before the 14-day hearing, RI staff documented no observations of Rawson acting violently or making threats. Likewise, during his 14-day commitment, RI documented no instance of: violent behavior, homicidal ideation, threats, aggression, or inability to care for his basic needs…." Geller Declaration at 77-78.

The court petitions that RI submitted for patients in 2018 suffer the same and similar serious deficiencies. They reflect that the information RI submitted to the Court as evidence for extending involuntary commitment was collected by someone else before the patient came to RI and that RI did not meaningfully evaluate the patient prior to submitting the petition so had no personal knowledge to justify petitioning for involuntary commitment.

1. Chart 26 (004188 - 004191)
2. Chart 48 (010357 – 010360)
3. Chart 55 (011694 – 011696)
4. Chart 55 (011702 – 011705)
5. Chart 57 (012003 – 012006)
6. Chart 68 (015628 – 015632)

### I. Useless Individual Progress Notes that should be meaningful

I previously opined that "Recovery Innovations and its staff did not meet the standard of care for evaluating and treating Kenneth Rawson," Geller Declaration at p. 79. I also found that Mr. Rawson "Was subjected to the judgments and dictates of staff neither educated, nor trained, nor certified, nor licensed to make such judgments or to dictate his environment" and that "The notes in Rawson's chart were written almost exclusively by staff not licensed to prescribe medication or conduct psychiatric evaluations. MHPs were mostly social workers, and lacked prescribing authority and an adequate educational background in psychiatry." Geller Declaration at pp. 75, 78.

The 2018 patient charts continue to reflect progress notes that ignore obvious signs of concern (e.g., disorientation) without assessment, and document meaningless and vague treatment plan steps (e.g. "continue to support" and "encourage" recovery) rendering useless notes that should assess patient needs or progress, and that should reflect actual interventions to be taken to help the patient.

      1.     Chart27 (RIPT.020403-020404)
      2.     Chart05 (RIPT.016923-016924)
      3.     Chart30 (RIPT.021215-021216)

### J. Non-psychopharm Treatment

In my prior Declaration, I found that while in the custody and care of Defendants, Mr. Rawson did not "receive non-pharmacologic treatments that were tailored to meet his individual needs, which is the standard." Geller Declaration at 75. Dr. Halarnakar and RI continue their gross negligence as exemplified in the following charts:

      1.     Chart79 (RIPT.026766)
      2.     Chart69 (RIPT.040043-040044, 040072-040075, 040064-040067, 040047-040048)
      3.     Chart68 (RIPT.015420-015429)

An Individual Progress Note in Chart 69 lists as a goal for the patient to "Accept the chemical dependence," but fails to note any inpatient treatment for the patient's drug use—which is wholly inadequate. Notably, the screening in Chart 69 fails to document that the patient even suffers from substance abuse, which is dangerously inadequate. And other Individual Progress Notes reflect that the provider just gave up conducting assessments purportedly because the patient "lack[ed] motivation" to do so, and that this took 15 minutes. RIPT.040043-040044, 040072-040075, 040064-040067, 040047-040048.

Likewise, Chart 68 contains no treatment plan addressing the patient's reported serious substance abuse and repeated attempted suicides. RIPT.015420-015429

### K. Group Progress Notes that say nothing about group

Earlier, I found that despite Defendants claiming that Mr. Rawson was attending groups as part of his treatment, "Treatment groups were not part of Rawson's treatment because they were not an intervention for a specific objective to address a particular problem; they should have been fashioned to meet Mr. Rawson's needs, if RI assessed he had treatment needs for a mental illness." Geller Declaration at p. 77. The 2018 patient chart notes reflect that the same failures by Recovery Innovations and Dr. Halarnakar continue this year, which include Group Progress Notes reflecting there was no group or that show no attention to the patients' particular conditions or needs:

1. Chart27 (RIPT.020401-020402)
2. Chart05 (RIPT.016972-016973)
3. Chart79 (RIPT.026689-026690)
4. Chart69 (RIPT.040068-040069)
5. Chart68 (RIPT.015379-015380)
6. Chart65 (RIPT.014867-014868)
7. Chart82 (RIPT.044789-044790, 044928-044929)

The opinions expressed each reflect gross negligence or deliberate indifference to the evaluation and treatment of RI's patients, and are all formed to a reasonable degree of medical certainty.

Respectfully submitted,

*Jeffrey Geller, MD, MPH*

Jeffrey Geller, MD, MPH