UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH RAWSON,<br><br>          Plaintiff,<br><br>  v.<br><br>RECOVERY INNOVATIONS, INC., et al.,<br><br>          Defendants. | CASE NO. C17-5342 BHS<br><br>ORDER |

This matter comes before the Court on Defendants Jennifer Clingenpeel, Sami French, Vasant Halarnakar, and Recovery Innovations, Inc.'s (collectively "RII") Motion for Partial Summary Judgment, Dkt. 215. Plaintiff Kenneth Rawson sued RII in May 2017 after RII involuntarily committed him for more than fifty days and administered to him psychotropic medication against his will. Dkt. 1. The Court has considered the briefing filed in support of and in opposition to the motion and the remainder of the file and grants the motion for the reasons stated below.

ORDER - 1

## I. FACTUAL BACKGROUND

The parties and the Court are familiar with the facts of this matter. Thus, the Court will state only the facts relevant to the instant motion. The Court does, however, recite the procedural history in full because this is the first substantive motion and order since the Ninth Circuit's remand.

RII is an Arizona corporation that operates multiple mental health facilities in Washington. Dkt. 201, ¶ 2.2. In the facility it rents from the state on the campus of Western State Hospital, RII holds and treats individuals who are involuntarily committed on an emergency basis. *Id.* ¶ 4.2. The individually named defendants—Mental Health Counselor Sami French, Nurse Practitioner Jennifer Clingenpeel, and Dr. Vasant Halarnakar—were employed by RII during the time period relevant to this case. *Id.* ¶¶ 2.4–2.5.

On March 6, 2015, Clark County Designated Mental Health Professional Al Padilla entered an emergency order to involuntarily commit Rawson after Rawson made threatening statements at a bank and took loaded firearms to that bank. *Id.* ¶ 4.7; Dkt. 63 at 4–7. Padilla committed Rawson to RII's care for up to 72 hours of evaluation and treatment. Dkt. 201, ¶ 4.9. After the initial 72-hour hold, RII petitioned Pierce County Superior Court to commit Rawson for an additional fourteen days. *Id.* ¶ 4.17. Ten days later, RII again petitioned the Court to detain Rawson for another ninety days. *Id.* ¶ 4.33. On April 29, 2015, RII withdrew its petition to commit Rawson for ninety days, agreeing to release him to the Veterans Administration Hospital in Portland, Oregon. *Id.* ¶ 4.59; Dkt. 63 at 11.

Rawson's main assertion is that RII mistreated him by keeping him detained for longer than necessary and involuntarily medicating him, despite medical providers observing that he was not acting violently and did not present a risk to the community. *See, e.g.*, Dkt. 201, ¶ 4.51. He argues that RII staff lied about his condition and held him illegally, against his will. RII generally argues that Rawson's commitment was legitimate and necessary to protect the community.

## II. PROCEDURAL HISTORY

Rawson filed this lawsuit on May 8, 2017. Dkt. 1. Rawson amended his complaint as a matter of course a month later, adding three new claims to the six originally asserted:[1] (1) RII violated Rawson's Fourth Amendment rights; (2) RII violated Rawson's Substantive Due Process rights under the Fourteenth Amendment; (3) RII violated Rawson's Procedural Due Process Rights under the Fourteenth Amendment; (4) RII violated Rawson's rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; (5) RII's conduct amounted to common law outrage; (6) RII falsely imprisoned Rawson; (7) RII committed medical malpractice under RCW Ch. 7.70; (8) RII violated Rawson's rights under the Washington Law Against Discrimination ("WLAD"); and (9) RII violated Rawson's rights under the Washington Consumer Protection Act ("CPA"), RCW Ch. 19.86. Dkt. 5, ¶¶ 5.2–5.10. Rawson seeks general and

---

[1] Rawson also asserts as a "claim" that RII is a state actor for purposes of § 1983. *See* Dkt. 1, ¶ 5.1. § 1983 provides litigants a cause of action to assert constitutional claims; it is not a standalone claim. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

ORDER - 3

Case 3:17-cv-05342-BHS Document 221 Filed 09/20/22 Page 3 of 18

specific damages, declaratory and injunctive relief, punitive damages, attorney's fees and costs, and post-judgment interest. *Id.* ¶¶ 6.1–6.8.

RII moved to dismiss all of Rawson's claims in July 2017, arguing that it is not a state actor for purposes of § 1983, that it is not subject to ADA liability because it is not a public entity, and that it is immune from Rawson's state law claims under the Involuntary Treatment Act ("ITA"). Dkt. 9. The Court denied RII's motion to dismiss, concluding that Rawson had plausibly stated each of his claims. Dkt. 17.

In April 2018, the parties stipulated to allow Rawson to amend his complaint for a second time to add a claim for "Damage for Excessive Detention" under the ITA, RCW 71.05.510. Dkt. 35, ¶ 5.11. On May 8, 2018, Defendants answered and asserted eleven affirmative defenses. Dkt. 36. Defendants in part asserted that Rawson failed to join one or more indispensable parties and that Rawson's damages were caused "by the acts or omissions of third parties over whom Defendants had no control." *Id.* at 8.

RII moved for summary judgment in September 2018 arguing that RII is not a state actor for purposes of § 1983 as a matter of law, that RII is immune from suit under the ITA, that RII is not a "public entity" for purposes of the ADA as a matter of law, that Rawson's healthcare claims are limited to remedies pursuant to RCW Ch. 7.70, that no reasonable person could conclude that RII's conduct rose to the level of outrage, that RII could not have unlawfully imprisoned him because they held him subject to a lawful court order, and that Rawson cannot establish a CPA claim because there was no financial incentive for RII or damage to Rawson's business or property. Dkt. 63. Rawson also moved for partial summary judgment, arguing that RII acted under color of state law

and violated his Fourth and Fourteenth Amendment rights as a matter of law, that the ITA does not provide RII immunity because it detained him for longer than permitted, that RII falsely imprisoned him by detaining him for longer than permitted, that Rawson named all indispensable parties, and that the named defendants had caused all of his injuries. Dkt. 58.

The Court denied without prejudice both parties' motions on the state action issue, concluding that it was impossible at that time to evaluate whether the hospitals' actions could be treated as those of the State. Dkt. 128 at 21. The Court granted RII's motion for summary judgment on Rawson's ADA claim, concluding that Rawson failed to meet his burden to identify evidence precluding summary judgment.[2] *Id.* at 21–23. The Court also rejected RII's ITA immunity argument, concluding reasonable jurors could differ based on the evidence presented, and rejected Rawson's motion with respect to his ITA claim, concluding that a question of material fact existed. *Id.* at 23–25. The Court further denied RII's healthcare claim limitations argument, granted RII's motion on Rawson's CPA claim, denied Rawson's motion on his false imprisonment claim, granted Rawson's motion on RII's affirmative defenses of failure to add an indispensable party and that

---

[2] RII focuses on a single line relating to Rawson's ADA claim in the Court's Order: "Rawson fails to identify a single fact to support any of the elements of his claim." Dkt. 128 at 22. RII has taken the Court's statement out of context. The Court meant to explain that instead of supporting his underlying ADA claim with facts and evidence in his briefing, Rawson simply argued that the Court had already denied RII's arguments in its order denying RII's motion to dismiss. Rawson therefore failed to meet his burden to show that there was a genuine issue of material fact on his ADA claim, instead "relying on the Court's previous order." *Id.* at 22.

ORDER - 5

damages were caused by an unnamed third party. *Id.* at 25–29. The Court made no substantive rulings on Rawson's WLAD claims. *See generally id.*

The parties then provided supplemental briefing on Rawson's § 1983 claims, Dkts. 136, 144, and RII moved for summary judgment on those claims, Dkt. 140. The Court concluded that there was no state action with respect to Rawson's fabrication of evidence and forced injection claims and dismissed those claims with prejudice. Dkt. 157. The Court further concluded that Rawson's due process claim based on wrongful detention was dismissed to the extent that it was based on his original 72-hour detention and his detention pursuant to the 14-day petition. *Id.* The Court reserved ruling on Rawson's due process claim for detention past the expiration of the 14-day petition. *Id.* Rawson moved the Court to reconsider, Dkt. 162, and the Court denied that motion, Dkt. 170. Rawson then moved the Court to voluntarily dismiss his remaining state claims, Dkt. 173, the Court granted that motion, Dkt. 175, and Rawson appealed his federal claims, Dkt. 175.

The Ninth Circuit reversed the Court's decision on state action and remanded the case. Dkt. 193. The Ninth Circuit concluded that this Court applied the wrong test in determining whether RII acted under color of state law and that RII did, in fact, act under color of state law. *Id.*

The parties then stipulated to allow Rawson to amend his complaint. Dkt. 200. Apparently, when Rawson previously dismissed his remaining state law claims, he refiled those claims in Pierce County Superior Court. *See id.* Pierce County Superior Court made one significant ruling in that case, denying RII's motion to dismiss and concluding that Rawson "stated a claim under the Washington Law Against Discrimination, RCW 49.60,

for disability discrimination on that grounds that he alleges [RII] failed to afford him a less restrictive alternative treatment environment." *Id.* Rawson then dismissed his state law case and stipulated with RII to file his third amended complaint in this case in October 2021. Dkt. 201. That complaint contains the eight claims[3] that remained prior to the Court's order dismissing some of Rawson's § 1983 claims. *Id.*

After the parties filed joint briefing on the remaining issues in the case, Dkt. 207, the Court permitted RII to file a motion for summary judgment on Rawson's WLAD claim, reopened the depositions of Rawson and the defendants (limited to two hours each), and granted the parties permission to file new motions in limine, deposition designations, and voir dire. Dkt. 213. Trial in this case is currently scheduled for December 6, 2022. Dkt. 212.

RII now moves for partial summary judgment on Rawson's WLAD claim. Dkt. 214. RII argues that Rawson purports to assert an "*Olmstead*-type" claim which is an ADA-specific claim that has never been recognized as a viable claim under WLAD. *Id.* RII further argues that Rawson's WLAD claim is precluded by the Court's previous dismissal of Rawson's ADA claim. *Id.* Rawson argues that the Court's previous decision does not have preclusive effect and that this Court should instead follow the Superior Court's decision in his state court case and hold that his *Olmstead* claim is viable under WLAD. Dkt. 217. Rawson further argues that an *Olmstead* claim can be asserted under

---

[3] Those claims are: (1) Fourth Amendment; (2) Substantive Due Process; (3) Procedural Due Process; (4) Outrage; (5) False Imprisonment; (6) Medical Malpractice; (7) WLAD; (8) ITA Excessive Detention. Dkt. 201.

ORDER - 7

1  WLAD because WLAD tracks the ADA. *Id.* RII replies that the Superior Court's holding
2  is not controlling. Dkt. 219.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case.

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

**B.     The Superior Court's Ruling Does Not Control.**

Rawson argues that the Superior Court's holding in his state court case controls in this case for two reasons. First, he argues that this Court must defer to how a Washington court would interpret WLAD because it is a state statute and the state court's interpretation is controlling. Dkt. 217 at 5–6. Second, he argues that the Superior Court's holding is law of the case. *Id.* at 6. RII argues that this Court is not bound by lower state court decisions, only by those of the Washington Supreme Court. Dkt. 220 at 2. RII further argues that the Superior Court simply held that Rawson's WLAD claim could survive the low standard of a motion to dismiss, nothing more. *Id.* at 2–3. Finally, while RII agrees that Rawson's WLAD claim is governed by Washington law, it points out that the *Olmstead* claims under WLAD are guided by Title II of the ADA which requires "exclusion, denial of benefits, or discrimination . . . by reason of [the plaintiff's] disability," which Rawson has failed to establish. *Id.* at 3–5.

The Superior Court's holding is not controlling for several reasons. First, the law of the case doctrine does not apply. "Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). Law of the case does not apply, however, to decisions in other cases. *See, e.g., Delta Savings Bank v. United States*, 265 F.3d 1017,

1027 (9th Cir. 2001) (refusing to apply law of the case doctrine where the parties had previously stipulated to dismiss the action and plaintiffs later re-filed); *see also Concha v. London*, 62 F.3d 1493, 1506 (9th Cir. 1995) (holding that a voluntary dismissal without prejudice "leaves the parties as though no action had been brought").

Rawson voluntarily dismissed his state court complaint after the Superior Court denied RII's motion to dismiss. While the facts and circumstances in that case are the same as the ones instantly presented, the law of the case doctrine does not apply because these are two separate cases. *See Delta Savings Bank*, 265 F.3d at 1027. The Court therefore will not consider the Superior Court's holding to be law of the case.

Second, state superior court decisions hold no precedential value. When interpreting state law, the federal court is "bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, [the federal court] must determine what result the [state supreme] court would reach based on state appellate court opinions, statutes and treatises." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (internal quotations omitted).

Rawson has not presented any state supreme court opinions or state appellate court opinions on this issue and declared in his brief that the only Washington state court to address the issue was the Pierce County Superior Court in his own, now voluntarily dismissed, case. Dkt. 217 at 6 (citing Dkt. 200-1). The Superior Court held that RII had a duty to provide a less restrictive alternative under the ITA, RCW 71.05.145, and that Rawson sufficiently stated a claim under WLAD by arguing that RII breached that duty

by failing to provide him a less restrictive alternative. Dkt. 200-1 at 2–3. That ruling has no precedential value.

Third, the motion to dismiss standard in federal court poses a higher bar than the motion to dismiss standard in state court. *McCurry v. Chevy Chase Bank, FSB*, 169 Wn.2d 96, 102–03 (2010) (declining to apply the federal "plausibility" standard in Washington state court). Further, the standard on a motion to dismiss is different than the standard on a motion for summary judgment. *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that to survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotations omitted) *with Anderson*, 477 U.S. at 248 (holding that summary judgment is proper if "there [is] no *genuine* issue of *material* fact") (emphasis in original).

The Superior Court reviewed Rawson's claims in a different case, applying a much lower standard of review than what is required of a federal court when considering a motion for summary judgment. This Court therefore declines to rely on the Superior Court's ruling in Rawson's state court case.

**C.**     ***Res Judicata* Does Not Apply.**

RII argues that Rawson's WLAD claim is barred by *res judicata* or collateral estoppel because this Court previously held that "Rawson fail[ed] to identify a single fact to support any of the elements of his [ADA] claim." Dkt. 215 at 13–14 (citing Dkt. 128 at 21–23). Rawson argues that neither *res judicata* nor collateral estoppel applies because his ADA claim was based on a theory of intentional discrimination while his WLAD

claim is an "*Olmstead* claim" based on failure to provide a less restrictive alternative. Dkt. 217 at 12. In other words, Rawson argues that there is not an identity of claims, which is a requirement under both preclusion doctrines. *Id.* at 13. RII replies that Rawson's *Olmstead* claim still falls within the purview of Article II of the ADA and the elements are "nearly identical." Dkt. 220 at 12. It argues that Rawson fails to distinguish the facts presented in his *Olmstead* claim to those previously presented in his ADA claim. *Id.*

*Res judicata* and collateral estoppel generally do not apply within the same proceeding. *United States v. Walker River Irrigation Dist.*, 890 F.3d 1161, 1172–73 (9th Cir. 2018). Rather, within the same proceeding, courts apply "the general principles of finality and repose, absent changed circumstances or unforeseen issues not previously litigated." *Id.* (internal quotations omitted). Collateral estoppel can come up in the same action in limited circumstances, such as to preclude re-litigation of subject matter jurisdiction. *See* 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4418 (3d ed. 2022). This is not one of those cases.

Collateral estoppel, also called issue preclusion, applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Arizona v. California*, 530 U.S. 392, 414 (2000) (internal quotations omitted). "The dismissal of alternative claims in a pending suit does not adjudicate the entire cause of action . . . and does not constitute a dismissal of plaintiff's entire cause of action." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159–60 (9th Cir. 2002) (cleaned up).

1    While *Amadeo* focuses on the inapplicability of *res judicata* to the voluntary

2 dismissal of a claim to pursue an appeal, the same concept applies equally here.

3 Collateral estoppel is "intended to promote judicial efficiency and the finality of

4 judgments by . . . prohibiting any party from litigating an issue that has been fully

5 litigated previously." *Id.* Rawson's ADA claim was not fully litigated; it was dismissed

6 because Rawson failed to provide any evidence. *See* Dkt. 128 at 22. RII did not assert the

7 same arguments in relation to Rawson's WLAD claim when it succeeded in dismissing

8 Rawson's ADA claim. The Court similarly did not reach the same conclusion with

9 respect to Rawson's WLAD claim. RII agreed to allow Rawson to amend his complaint,

10 Dkt. 201, and he has the right to attempt to support his WLAD claim.

11   This Court therefore declines to apply *res judicata* or collateral estoppel to

12 Rawson's WLAD claim.

13 **D.    Rawson's WLAD Claim Fails as a Matter of Law.**

14   RII argues that Rawson has failed to properly allege and support three of the four

15 elements of his WLAD claim. Dkt. 215 at 6–11. Specifically, RII asserts that Rawson

16 failed to show (1) that he is a member of a protected class, (2) that he was discriminated

17 against, and (3) that any such discrimination was the result of his perceived disability. *Id.*

18 RII further asserts that an *Olmstead* claim is not viable and has never been recognized

19 under WLAD. *Id.* at 11–13. Rawson argues that RII does not apply the correct framework

20 to his WLAD *Olmstead* claim by applying the framework for a disparate treatment claim.

21 Dkt. 217 at 7. He further argues that an *Olmstead* claim is viable under WLAD and that

22

he has provided enough evidence to survive summary judgment on such a claim. *Id.* at 8–12.

As far as the Court is aware, no Washington appellate court or federal court applying Washington law has ever recognized an *Olmstead* claim under WLAD. This is consistent with Rawson's assertion that the Superior Court in his state case was "[t]he only Washington court to address the matter." Dkt. 217 at 6. Therefore, as to the question of whether an *Olmstead* claim is viable under WLAD, the Court must determine whether the Washington Supreme Court would conclude such a claim exists. *See Mudpie, Inc.*, 15 F.4th at 889.

Although "[j]udicial interpretations of the ADA and the WLAD differ slightly in the way they phrase the elements of an accommodation under the two statutes . . . the basic requirements are essentially the same." *McDaniels v. Grp. Health Co-op*, 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014). Both statutes require the plaintiff to show that (1) he is disabled; (2) RII is a place of public accommodation; (3) he was discriminated against by receiving services not comparable to those provided to individuals without disabilities; and (4) his disability was a substantial factor causing the discrimination. *Compare Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 637 (1996) (en banc) (laying out the *prima facie* elements of a WLAD public accommodations claim) *with Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (laying out the *prima facie* elements of an ADA public accommodations claim).

Washington courts have repeatedly held that, in general, WLAD is at least as protective as the ADA; in many contexts, Washington courts have held that WLAD is

more protective. *See Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 491 and n.14 (2014) (en banc) (collecting cases and confirming that the Washington Supreme Court "has almost always ruled that the WLAD provides greater employee protections than its federal counterparts"). Nevertheless, Washington courts have interpreted WLAD to be less protective than the ADA in instances where an alternative interpretation would not align with existing state law. For example, while punitive damages are available under Title VII of the ADA, they are not available under WLAD. *Dailey v. N. Coast Life Ins. Co.*, 129 Wn.2d 572, 575–76 (1996). Washington courts concluded this was consistent with the general policy in Washington state of not allowing punitive damages.

In *Olmstead v. L.C. ex rel. Zimring*, two mentally disabled patients sued state officials, arguing that the state's failure to place them in community-based treatment programs, and instead keeping them institutionalized at psychiatric hospitals, amounted to discrimination under the ADA. 527 U.S. 581, 588 (1999). The Supreme Court held that the state's actions violated the ADA. *Id.* at 607. The Court focused first on language in the ADA that expressed Congress's intent to protect mentally disabled individuals by allowing them to re-integrate into the community:

> (2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
>
> (3) discrimination against individuals with disabilities persists in such critical areas as . . . institutionalization . . . ;
>
> . . .

ORDER - 15

> (5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, . . . failure to make modifications to existing facilities and practices, . . . [and] segregation . . . .

*Id.* at 588–89 (internal quotation marks omitted) (quoting 42 U.S.C. §§ 12101(a)(2), (3), (5)). The Court also pointed to Title II regulations issued by the Attorney General expressing a similar sentiment:

> A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

*Id.* at 592 (quoting 28 C.F.R. § 35.130(d)). "Most integrated setting" is defined as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." 28 C.F.R. pt. 35, App. B (2011).

In contrast, there are no similar provisions under either WLAD or its corresponding regulations. *See generally* RCW Ch. 49.60; WAC Title 162. Instead, the Washington legislature passed the Involuntary Treatment Act in 1973—twenty-four years after passing WLAD. The ITA has similar goals as the ADA:

> The provisions of this chapter . . . are intended by the legislature:
>
> (b) To prevent inappropriate, indefinite commitment of persons living with behavioral health disorders and to eliminate legal disabilities that arise from such commitment;
>
> . . .
>
> (g) To encourage whenever appropriate, that services be provided within the community.

RCW 71.05.010(1)(b), (g). The ITA also specifically requires treatment facilities to, when appropriate, "file a petition for a ninety-day less restrictive alternative in lieu of a petition for a fourteen-day commitment." RCW 71.05.145. Moreover, the ITA provides a

separate cause of action when an individual violates the Act "by detaining a person for more than the allowable number of days." RCW 71.05.510. Rawson asserts such a claim in his operative complaint. Dkt. 201, ¶ 5.9.

"We presume that the legislature enacts laws with full knowledge of existing laws." *Matter of Adoption of T.W.*, 186 Wn.2d 828, 850 (2016) (en banc) (cleaned up); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) ("[W]e presume that Congress is aware of existing law when it passes legislation." (internal quotation marks omitted)). If WLAD contained an *Olmstead*-type cause of action, there would have been no reason for the legislature to create a new cause of action under the ITA, as it did at RCW 71.05.510.

Therefore, because WLAD and its corresponding regulations do not track the ADA in relation to re-integrating mentally disabled individuals back into the community, and because Washington law provides another cause of action to assert claims based on involuntary commitment and community re-integration, the Court concludes that no *Olmstead* claims exists under WLAD.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendant Recovery Innovations, Inc.'s Motion for Partial Summary Judgment, Dkt. 215, is **GRANTED**. Rawson's WLAD claim is **DISMISSED with prejudice**.

1  Dated this 20th day of September, 2022.

BENJAMIN H. SETTLE
United States District Judge