UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH RAWSON,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>RECOVERY INNOVATIONS, INC., et al.,<br><br>　　　　　　　Defendants. | CASE NO. C17-5342 BHS<br><br>ORDER |

This matter comes before the Court on Plaintiff Kenneth Rawson's Trial Brief, Dkt. 249, and Defendants Recovery Innovations, Inc. ("RI"), Jennifer Clingenpeel, Sami French, and Vasant Halarnakar's Response, Dkt. 258.

**I.　BACKGROUND**

This case stems from RI's involuntary commitment of Kenneth Rawson in 2015. All of the individual defendants worked for RI while Rawson was committed at its facility. This case's long procedural history was most recently detailed in this Court's Order Granting Defendants' Motion for Partial Summary Judgment on Rawson's

Washington Law Against Discrimination claim, Dkt. 221 at 3–8, and need not be repeated here.

This case is set for trial on December 6, 2023. In preparation, the parties submitted trial briefs, Dkts. 249 and 255, proposed jury instructions, Dkts. 246 and 250, and proposed verdict forms, Dkts. 250-1 and -2. These filings raise various legal issues that should have been addressed in motions practice months before trial. Specifically, Rawson's trial brief complains about three legal defenses Defendants intend to argue at trial, which they seek to include in the jury instructions and on the verdict form. The Court therefore sought a response from Defendants on those issues. *See* Dkts. 257, 258. Those issues—the *Noerr-Pennington* doctrine, Washington's litigation privilege, and good faith—are now before the Court in an abnormal posture; it is not typical for the Court to issue an order responsive to a party's trial brief. Nevertheless, given the complexity of the legal issues involved and the need to prepare jury instructions, the Court finds it necessary to issue this Order.

Before addressing the parties' arguments, the merits of those arguments, and the applicability of these three defenses, it is worth noting that these issues have been raised far too late in this litigation for the Court to make any dispositive type of ruling. Defendants asserted all three legal defenses, but they are not before the Court on a dispositive motion. They have now proposed jury instructions relating to them. That is what is at issue before the Court. Thus, the following conclusions serve only to guide how the parties proceed at trial and the construction of jury instructions.

## II. DISCUSSION

**A.  All Three Defenses Remain Part of this Case.**

Rawson argues that none of these defenses remain in the case. He argues that the Court effectively disposed of Defendants' *Noerr-Pennington* doctrine and litigation privilege defenses in its Order on Summary Judgment, Dkt. 157. Dkt. 249 at 1–2. He also argues that Defendants forfeited good faith as an affirmative defense by failing to raise it until November 11, 2022—less than a month before this case is set for trial. *Id.* at 2.

Rawson sued in May 2017. Dkt. 1. He has since amended his complaint three times. Dkts. 5, 35, 201. In response to those amended complaints, Defendants filed a Motion to Dismiss, Dkt. 9, and two Answers, Dkts. 36, 233, respectively. Defendants filed their most recent Answer, Dkt. 233, on November 11, 2022—a year after Rawson filed the operative complaint on October 26, 2021, Dkt. 201. Rawson's remaining claims are: (1) a § 1983 claim for violation of his Fourth Amendment rights; (2) a § 1983 claim for violation of his Fourteenth Amendment rights; (3) outrage; (4) false imprisonment; (5) medical malpractice; and (6) violation of Washington's Involuntary Treatment Act ("ITA"). Dkt. 239 at 1–2.

Both of Defendants' answers assert affirmative defenses[1] based on the *Noerr-Pennington* doctrine, "the litigation privilege," and ITA immunity, RCW 71.05.120. Dkt. 36 at 8–9; Dkt. 233 at 8. RCW 71.05.120(1) provides immunity for evaluation and treatment providers from civil and criminal liability if they perform certain duties detailed

---

[1] The bulk of the affirmative defenses, including "failure to state a claim," are not affirmative defenses upon which Defendants carry any burden of proof.

ORDER - 3

in the ITA "in good faith and without gross negligence." In Defendants' second answer, they added an affirmative defense stating: "Defendants acted with a good faith belief that their actions were consistent with state law." Dkt. 233 at 8.

The *Noerr-Pennington* doctrine and Washington's litigation privilege were discussed by the Court once before in its Order on the parties cross-motions for summary judgment on Rawson's § 1983 claims. Dkt. 157. In that Order, the Court concluded that Defendants did not act under color of state law for two of Rawson's three § 1983 claims: fabrication of evidence and forced injection. *Id.* at 24–25. The Court reserved ruling on whether Defendants acted under color of state law as to Rawson's commitment past the fourteen-day petition. *Id.* at 14–24. The Court only considered the merits, including the application of *Noerr-Pennington* and Washington's litigation privilege, after deciding the state action question. *Id.* at 25–28. As to those two issues, the Court concluded:

> Regarding the [*Noerr-Pennington* doctrine and Washington's litigation privilege], Defendants fail to show that either applies to the facts of this case. No doctrine immunizing filings with the Court seems applicable to the actions forming the basis of Rawson's remaining due process claim. Therefore, the Court denies Defendants' motion on these asserted immunities.

*Id.* at 26. The Ninth Circuit later reversed this Court's conclusion on state action, holding that Defendants acted under color of state law for all of Rawson's § 1983 claims. *See* Dkts. 193, 195.

Rawson claims that this Court's ruling on these immunities is binding and Defendants can therefore no longer raise them as affirmative defenses. As an initial matter, a denial of summary judgment does not necessarily dismiss an issue from a case.

ORDER - 4

If it did, some of Rawson's remaining claims, such as false imprisonment, would no longer be viable. *See* Dkt. 128 at 27 (denying Rawson's motion for summary judgment on his false imprisonment claim). To the extent Rawson is arguing that the Court's prior decision is the law of the case, the Court's statement means very little. It commented only that Defendants "fail[ed] to show that either [immunity] applies to the facts of this case." Dkt. 157 at 26. A failure to show an affirmative defense conclusively applies at summary judgment does not amount to dismissal. Rawson did not move for summary judgment on the *Noerr-Pennington* doctrine or Washington's litigation privilege and they therefore remain part of the case.

As to good faith, Rawson was on notice from at least the time Defendants filed their first answer in this case, Dkt. 36, that they intended to assert a good faith defense based on the immunity provision in the ITA, RCW 71.05.120(1). Good faith and its applicability to Rawson's § 1983 claims will be discussed later in this Order.

**B.    The *Noerr-Pennington* Doctrine**

"The *Noerr-Pennington* doctrine protects the First Amendment 'right of the people . . . to petition the Government for a redress of grievances.'" *Nunag-Tanedo v. E. Baton Rouge Parish School Bd.*, 711 F.3d 1136, 1139 (9th Cir. 2013) (quoting U.S. Const. amend. I). The doctrine protects those who petition any department of Government, including the courts. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009) (holding that "the right to petition extends to all departments of the government and includes access to the courts") (internal quotations omitted). While the doctrine was developed in the antitrust context, it has been extended to apply to other

statutory schemes. *See BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 526 (2002) (applying the doctrine to the National Labor Relations Act).

*Noerr-Pennington* has been broadened over time. Relevant to this case, it has been held to apply to § 1983 actions and state actors. *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000) ("Nor do we interpret § 1983 to subject government entities or officials to liability for activity that is protected by *Noerr-Pennington* immunity."); *see also Kearney*, 590 F.3d at 645 ("We find that a governmental entity or official may receive *Noerr-Pennington* immunity for the petitioning involved in an eminent domain proceeding."). "[A]gents of . . . litigation—employees and law firms and lawyers—may benefit from the immunity as well." *Kearney*, 590 F.3d at 645. In regard to court petitions, it has also been applied to "conduct incidental to prosecution of the suit." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006).

In this Circuit, *Noerr-Pennington* "stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa*, 437 F.3d at 931. Courts therefore "must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Id.* The doctrine is "no more a protection from litigation itself than is any other ordinary defense, affirmative or otherwise and constitutionally grounded or not." *Nunag-Tanedo*, 711 F.3d at 1140. In other words, it is "a rule of construction" that "circumscribe[s] the reach of the cause of action" and "merges into the merits of the liability determination." *Id.* at 1139. In that

sense, the Ninth Circuit has compared it to a statute of limitations defense, which "does not provide immunity from litigation." *Id.* at 1140.

While *Noerr-Pennington* has been construed broadly over time, the "sham exception" limits its scope. The sham exception applies in three circumstances when the relevant branch of government is a court of law: (1) "the lawsuit was objectively baseless and the defendant's motive in bringing it was unlawful"; (2) the lawsuit is one of a series of lawsuits brought "pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose"; or (3) the defendant makes "intentional misrepresentations to the court," depriving the litigation of its legitimacy. *See Sosa*, 437 F.3d at 938.

The Supreme Court has adopted a three-part inquiry to determine whether a defendant's conduct is protected by the *Noerr-Pennington* doctrine: "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity." *Kearney*, 590 F.3d at 644. If *Noerr-Pennington* applies under this test, the court must then examine whether the sham exception applies. *Id.* at 646–48.

Rawson does not contest that *Noerr-Pennington* applies to his claims regarding Defendants' court petitions. This Court therefore need not fully review the doctrine except to say that it likely applies to this case. First, Rawson's lawsuit imposes a burden on petitioning rights by potentially subjecting health care providers to liability for petitioning a court which could chill speech. Second, Defendants engaged in protected

activity in petitioning the court. Third, § 1983 cannot be construed to preclude the burden.

Rawson does argue, however, that all three circumstances of the sham exception apply in this case. He argues that "Defendants' petitions to extend his involuntary detention were objectively baseless, they knowingly misrepresented his condition, and were improperly motivated by bad faith to protect against the risk of liability—a financial incentive—not because he met the criteria set by state law." Dkt. 249 at 3. He further argues that Defendants have a practice of detaining every patient involuntarily and that they have "engaged in filing a 'pattern of baseless, repetitive claims . . . which leads the factfinder to conclude that the administrative and judicial processes have been abused.'" *Id.* (quoting *Prof'l Real Est. Inv'rs v. Columbia Picture Industries, Inc.*, 508 U.S. 49, 57 (1993)).

Defendants do not necessarily challenge that Rawson may argue a sham litigation exception. They do dispute Rawson's further argument that the jury should not be instructed on *Noerr-Pennington*. Dkt. 249 at 3; Dkt. 258 at 3. They also challenge Rawson's assertion that, "[i]f the jury finds in Plaintiff's favor on his federal civil rights claims, it will have decided that Defendants' petitions were a sham." Dkt. 249 at 4; Dkt. 258 at 3.

Had this issue been raised in a summary judgment motion, the Court would have concluded that issues of fact remain on Rawson's sham exception argument. The Court agrees with Rawson that a jury instruction explaining the *Noerr-Pennington* doctrine is wholly unnecessary and improper.

Nevertheless, the jury is tasked with deciding questions of fact and there is a factual question regarding whether a sham exception applies. Therefore, the parties shall submit a joint proposed instruction on this issue by November 30, 2022. The instruction should not be overly complex and need not describe what the *Noerr-Pennington* doctrine is. If there is no agreement, each party shall submit a proposed instruction and the opposing party may submit an objection.

**C.  Litigation Privilege**

Defendants argue that they are entitled to litigation privilege, also referred to as "witness immunity" on any claims regarding the allegedly false affidavits they submitted and allegedly false testimony they made in connection with their petitions to the court. Dkt. 258 at 4–5. Rawson argues that there is no federal common law litigation privilege, that Washington's litigation privilege does not apply in federal court, and that "the Supremacy Clause precludes applying a state privilege to impede a federal claim." Dkt. 249 at 5–6. Defendants argue that federal courts in the Ninth Circuit have, in fact, applied state litigation privilege to bar claims in federal court. Dkt. 258 at 4–5 (citing *Kearney*, 590 F.3d at 650; *Allstate Ins. Co. v. Tacoma Therapy, Inc.*, No. 13-cv-5214 RBL, 2014 WL 1494100, at *4 (W.D. Wash. Apr. 16, 2014)).

Rawson's assertion that there is no federal common law litigation privilege does not appear to be accurate. Federal courts, including the Supreme Court, have applied federal common law witness immunity for decades, if not centuries. *See, e.g.*, *Briscoe v. LaHue*, 460 U.S. 325, 345–46 (1983) (holding that under federal law, witnesses enjoy absolute immunity from damages actions based on their testimony and stating that

"common-law immunity for witnesses was well settled" in 1871). Further, the federal cases Defendants cite appear to apply state witness immunity to state claims. *See, e.g.*, *Allstate*, 2014 WL 1494100, at *4 (applying Washington's litigation privilege to a state law defamation claim). Nevertheless, the federal and Washington witness immunities are comparable, and are similarly broad.

"The general rule is that witnesses in judicial proceedings are absolutely immune from suit founded on their testimony." *Wynn v. Earin*, 163 Wn. 2d 361, 369–70 (2008); *see also Briscoe v. LaHue*, 460 U.S. 325, 345–46 (1983). The immunity has been extended to quasi-judicial settings where there are sufficient safeguards in place to "ensure the reliability of testimony." *Mason v. Mason*, 19 Wn. App. 2d 803, 832 (2021); *see also Sprague v. Med. Bd. of Cal.*, No. 07-cv-1561-JLS (LSP), 2009 WL 10698417, at *4–6 (S.D. Cal. Mar. 30, 2009).

Witness immunity is broad, but not limitless. It extends to the "acts and communications which occur in connection with the preparation of that testimony," *Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*, 113 Wn.2d 123, 136 (1989), and to perjured testimony, *Dexter v. Spokane Cnty. Health Dist.*, 76 Wn. App. 372, 376 (1994). *See also Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2000) (holding witness immunity extends to allegations of conspiracy to commit perjury). But it only extends to those acts and communications relating to the *preparation of testimony*—witnesses "enjoy no immunity for non-testimonial acts such as fabricating evidence." *Paine v. City of Lompoc*, 265 F.3d 975, 982 (9th Cir. 2001) (internal quotation omitted); *see also Wynn*, 163 Wn.2d at 376 (distinguishing between a "claim of negligence based on [a]

witness's testimony" which would be covered by witness immunity, and "a claim of negligent diagnosis or treatment," which would not). Moreover, "[a]bsolute witness immunity does not extend to 'complaining witnesses,' those individuals whose allegations serve to bring about a prosecution." *Paine v. City of Lompoc*, 265 F.3d 975, 981 n.2 (9th Cir. 2001).

Rawson alleges that Defendants violated his constitutional rights in their commitment petition to the state court. Thus, Defendants were the "complaining witnesses" and witness immunity does not shield their petitions. To the extent Rawson's claims are based on Defendants' testimony or preparation of testimony, even if that testimony was false or perjured, that is shielded by witness immunity and is improper.

The Court will not instruct the jury on witness immunity. It is a legal issue that is to be decided by the Court. There is no factual question the jury needs to decide as to witness immunity. If there is an issue as to whether something is testimonial in nature, that is a legal question that should be raised with the Court.

**D.     Good Faith**

Rawson argues that Defendants did not properly preserve their good faith affirmative defense to their § 1983 claims because they did not raise it until their most recent Answer, which was filed less than a month before the scheduled trial date and a year after Rawson filed his operative complaint. Dkt. 249 at 6–9. He also argues that a good faith defense is inapplicable in this case. *Id.* at 9–10. Defendants argue that they properly preserved their good faith defense in both answers, and that the good faith defense is proper based on Ninth Circuit case law. Dkt. 258 at 5–10.

The parties do not dispute that Defendants preserved and may assert ITA immunity on their state law claims. In fact, the parties jointly propose including language from RCW 71.05.120 in the jury instructions for Rawson's medical malpractice and false imprisonment claims. What is at issue is whether Defendants are entitled to assert a good faith defense to Rawson's § 1983 claims based on their good faith reliance on state law, specifically provisions in the ITA.

The Ninth Circuit has recognized that private defendants sued under § 1983 can assert a good faith defense. *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008). A good faith defense in this context is an affirmative defense. *See Danielson v. Inslee*, 945 F.3d 1096, 1097 (9th Cir. 2019) ("[P]rivate parties may invoke an affirmative defense of good faith to retrospective monetary liability under 42 U.S.C. § 1983, where they acted in direct reliance on then-binding Supreme Court precedent and presumptively-valid state law.").

Rawson argues that this line of case law is inapplicable because it has been applied in two situations different from the one at hand. Dkt. 249 at 9–10. The first situation in which it has been applied is when a defendant acted in good faith reliance on orders from another actor. *See, e.g.*, *Clement*, 518 F.3d at 1097 (concluding a private towing company acting under color of state law was entitled to assert a good faith defense because in towing the plaintiff's car it had relied on orders and assurances from the police). The second situation is when a defendant complied with a law that the plaintiff claimed to be unconstitutional. *See, e.g.*, *Danielson v. AFSCME Council 28*, 340 F. Supp. 3d 1083, 1084–87 (W.D. Wash. 2018) (concluding that defendant unions were entitled to a good

faith defense against claims that they had unconstitutionally deducted fees from public employees' paychecks because they followed applicable laws allowing for such deductions at the time).

The Court agrees with Rawson that this case presents an entirely different context. Defendants did not rely on anyone else's assurances or orders in holding Rawson, in forcibly injecting him, or in allegedly fabricating evidence against him. Similarly, this is not a situation where conduct that was once considered lawful was later ruled to be unconstitutional. The Ninth Circuit's model jury instructions similarly limit the § 1983 good faith defense to these two specific scenarios. *See* Ninth Circuit Court of Appeals, Manual of Model Civil Jury Instructions, Ch. 9, Introductory Comment. To the extent Defendants violated Rawson's Fourth or Fourteenth Amendment rights, the ITA cannot shield them from liability. The ITA cannot and should not be read to shield unconstitutional conduct.

Further, Defendants failed to preserve this affirmative defense. They first argue that they preserved the defense by including it in the Answer they filed on November 11, 2022—over a year after Rawson filed the operative complaint and less than one month before trial. Dkt. 258 at 8. This is far past the time Defendants had to properly respond to Rawson's complaint. Fed. R. Civ. P. 12(a)(1) (specifying a party must serve an answer within 21 days of being served with the complaint or within 60 days if the party has waived service). It was also unquestionably insufficient to provide Rawson with notice, or a chance to challenge the applicability of the defense through a dispositive motion.

Defendants also argue that by alleging an affirmative defense based on "qualified immunity" in their original answer, Dkt. 36, they put Rawson on notice of their intent to assert such a defense. Dkt. 258 at 5–10. But as Defendants themselves concede, they are not entitled to assert a qualified immunity defense. Further, a good faith defense to § 1983 is not the same as a qualified immunity defense. *See Allen v. Santa Clara Cnty. Correctional Peace Officers Ass'n*, 38 F.4th 68, 73 (9th Cir. 2022) (distinguishing qualified immunity from a good faith defense to § 1983 claims). It has been applied in specific situations where defendants relied in good faith on a law or order from a government official that later turned out to be unconstitutional. Defendants did not properly put Rawson on notice of their intent to raise a good faith affirmative defense to his § 1983 claims and it has therefore been waived.

### III.  ORDER

In sum, Defendants may be entitled to *Noerr-Pennington* immunity; it depends on whether the sham exception applies, which in turn depends on disputed issues of fact. The parties shall craft a jury instruction on that issue. The Court will not summarily dismiss any of Rawson's claims based on witness immunity. There is insufficient evidence at this point that any of his claims are based on witness testimony arising after Defendants submitted the petition, which is not shielded by the immunity. Defendants are not entitled to a good faith affirmative defense to their § 1983 claims; it is inapplicable and was not preserved. Good faith remains a viable defense, however, to any claims for which *bad* faith is an element. The burden of proving bad faith remains with the plaintiff, Rawson.

IT IS SO ORDERED.

Dated this 22nd day of November, 2022.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge